FILED
CLERK

10/28/2022 9:18 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X

IN RE 21ST BIRTHDAY DENIALS OF
SPECIAL IMMIGRANT JUVENILE
STATUS APPLICATIONS BY USCIS.

MEMORANDUM OF DECISION
AND SHOW CAUSE ORDER

Civil Action Nos. 22-CV-1926 (GRB)
22-CV-2319 (GRB)

-------------------------------------------------------- X

**APPEARANCES:**

For Plaintiffs:
Bruno J. Bembi
Attorney at Law
P.O. Box 5248
Hempstead, NY 11551

For Defendants:
Megan J. Freismuth, AUSA
Vincent Lipari, AUSA
United States Attorney's Office
610 Federal Plaza
Central Islip, NY 11722

**GARY R. BROWN, U.S. District Judge:**

"*[T]he Government should turn square corners in dealing with the people.*"

-Justice Holmes[1]

Under U.S. law, when a state court determines that an immigrant under the age of 21 has been abused, neglected or abandoned by one or both parents making reunification with those parents impossible, that young immigrant may qualify for Special Immigrant Juvenile (SIJ) status, a Congressionally-enacted program that provides a path to residency and U.S. citizenship. In two actions before this Court, USCIS denied SIJ petitions, which otherwise appeared properly filed and

---

[1] *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1909 (2020) (reiterating this axiom and finding that the Department of Homeland Security had acted in an arbitrary and capricious fashion by rescinding the Deferred Action for Childhood Arrivals (DACA) program).
.

complete, on the sole ground that the petitions were received by USCIS's Chicago office (where such petitions must be sent) on the applicant's 21st birthday, even though they were sent via overnight delivery substantially before that date, and USCIS does not permit filing such applications electronically or by hand delivery.

Denial of SIJ status and the path to residency and American citizenship under these circumstances is dystopian and cruel. While concerning, such wanton disregard of human decency does not render these claims meritorious. Rather, these claims are actionable under the Administrative Procedure Act because USCIS's decisions appear to have been arbitrary, capricious and, at times, unlawful.

Why? First, USCIS denied applications by those whom, like plaintiffs, had the great misfortune of having their applications arrive on their 21st birthdays, without considering the time of their birth, as demanded by controlling caselaw. Second, in calculating the timeliness of SIJ applications, USCIS failed to extend time when the due date fell on a federal holiday, contrary to binding regulation. Third, USCIS – a federal agency with more than 200 offices worldwide – prescribed that every SIJ application must be sent to its offices in Chicago. Fourth, these applications had to be sent by mail or overnight courier, as USCIS did not permit electronic or personal delivery. Fifth, rather than the date of acceptance by the United States Postal Service or overnight courier, USCIS regulations directed that the receipt of the documents by USCIS in Chicago governed whether the applications were timely. Sixth, USCIS failed to account for delivery time, even though its regulations provided for a three-day mailing period when it mails documents to applicants. Seventh, USCIS made no allowance for unavoidable delays attributable to significant weather events. Eighth, though it granted a sixty-day extension of many types of deadlines during the coronavirus pandemic, USCIS inexplicably excluded SIJ applications from this extension.

Any one of these eight reasons could well give rise to the inference that the agency had acted

arbitrarily and capriciously – and in certain instances unlawfully – in denying SIJ applications. Taken together, these issues make that conclusion virtually inescapable, and there are indications that these practices are widespread. After moving to dismiss these cases on fallacious grounds shortly before an evidentiary hearing, the government filed stipulations of dismissal without disclosing the underlying settlement agreement, potentially violating the Department of Justice's policy against non-public settlements. Under these circumstances, strict compliance with that policy appears particularly crucial, and given the apparently prevalent nature of the unlawful practices described in this opinion, the Court must consider additional relief.

## BACKGROUND

*Aguinaga-Diaz v. Garland, et al. 22-CV-2319 (GRB)*

On December 1, 2020, during the height of the pandemic, Angelina Raquel Aguinaga-Diaz filed a petition for guardianship and a motion seeking special findings from the Nassau County Family Court. DE 17 at 125-27. On January 26, 2021, that court found that Aguinaga-Diaz had been abandoned by her mother, and appointed a guardian. DE 17 at 125-27. Armed with these findings, plaintiff's counsel filed a Petition for Amerasian, Widow(er), or Special Immigrant, Form I-360 (hereinafter "I-360"), dated January 27, 2021. DE 17 at 81. Plaintiff's counsel submitted the application via overnight delivery through the U.S. Post Office on February 2, 2021, which according to official U.S. Postal tracking information, was scheduled for delivery on February 3, 2021. DE 17 at 57-58. Unfortunately for plaintiff, the Northeastern United States was hit by a weather event nicknamed "Winter Storm Orlena":

> February did not arrive quietly this year. Instead, Winter Storm Orlena blanketed New York City with the largest single snow event it's seen in five years. According to the National Weather Service, 17.2 inches of snow was officially recorded Tuesday morning in New York's Central Park.[2]

---

[2] "Winter Storm Orlena By the Numbers," NY City Lens (Feb. 2, 2021), https://nycitylens.com/winter-storm-orlena-by-the-numbers/, last accessed Oct. 27, 2022.

As a result, the Postal Service delayed the delivery by one day, delivering the parcel on February 4, 2021, where it was "available for pickup" by 10:56 a.m. Central Standard Time (CST). DE 17 at 58. This was plaintiff's 21st birthday. DE 17 at 6. Eventually, plaintiff's application was stamped "DENIED" with a date of February 8, 2022 (over a year after receipt), which denial was expunged by hand, but then stamped "DENIED" a second time on April 15, 2022:



DE 17 at 12, 106.[3] USCIS ultimately denied the application in a decision which, like the rest of the file, is riddled with errors by the agency, on the following grounds:

> Based on the evidence you provided, as well as USCIS records, your date of birth is February 4, 2000. USCIS has reviewed the supporting documents in response to the NOID sent on October 5, 2021 by your attorney. USCIS recognizes that the receipt number MSC2190876361, with the priority date Feburary [sic] 4, 2021, was rejected erronously [sic], and USCIS will honor the priority date as being Feburary [sic] 4, 2021. However, after review of your Form I-360, it was still receipted [sic] on your actual birthday of February 4, 2021 therefore, even if we had not rejected, it would still be considered a late filing. It has been determined that you are still over the age of 21 at the time you filed your petition, therefore, you are ineligible for SIJ classification. 8 C.F.R. 204.11 (c)(1)

DE 17 at 101 ("Aguinaga-Diaz Decision"). That decision explicitly rests on two regulations quoted as follows:

> 8 C.F.R. 103.2(a)(7) Benefit requests submitted. (i) USCIS will consider a benefit request received and will record the receipt date as of the actual date of receipt at the location designated for filing such benefit request *whether electronically or in paper format;* and

> 8 C.F.R. 204.1 (b) Proper filing. A petition for an alien relative and a petition for

---

[3] That these stamps showcase the Statute of Liberty, the traditional symbol of welcome for immigrants, is disheartening.

> Amerasian, widow(er), or special immigrant must be filed on the form prescribed by USCIS in accordance with the form instructions, and will be considered properly filed when the petition is filed in accordance with 8 C.F.R. 103.2. The filing date of a petition is the date it is properly filed and received by USCIS. That date will constitute the priority date.

*Id.* (emphasis added). In a sworn statement, Aguinaga-Diaz averred that, based upon information provided by her mother and father, she was born at approximately 1 p.m. (CST).[4] DE 18 at 8. This evidence, requested by the Court, is the only record evidence concerning the time of her birth.

*Chacon v. Garland, et al. 22-CV-1926 (GRB)*

On March 22, 2017, a petition was filed in Nassau County Family Court on behalf of plaintiff, Jessica Fernanda Inga Chacon. DE 14 at 35. On May 18, 2017, that court granted a petition for guardianship and a motion seeking special findings, holding that plaintiff Chacon, a juvenile from Ecuador, had been abandoned by her father since birth, and appointing a guardian. DE 14 at 35-36. Plaintiff's counsel prepared an I-130 dated May 25, 2017. DE 14 at 60. Plaintiff's counsel submitted the application via FedEx overnight delivery on May 26, 2017, which due to the intercession of Memorial Day, was scheduled for delivery on Tuesday, May 30, 2017. DE 14 at 72.

In a decision dated January 11, 2019, USCIS rejected her application, stating as follows:

> After review of your [I-360], Receipt No. MSC1791314343, with a receipt date of May 30, 2017, it appears that you were not under the age of 21 at the time of filing. USCIS records show that your package was mailed via FedEx, tracking number 786701940925, on May 26, 2017 and received by USCIS on May 30, 2017. Based on the evidence you provided as well as USCIS records, your date of birth is May 30, 1996; therefore, it has been determined that you were 21 years old at the time of filing your Form I-360.

DE 14 at 38 ("Chacon Decision"). As with the Aguinaga-Diaz Decision, the Chacon Decision explicitly relies upon and quotes the text of 8 C.F.R. 103.2(a)(7) and 8 C.F.R. 204.1(b), set forth

---

[4] "Central Standard Time (CST)," https://www.timeanddate.com/time/zones/cst, last accessed Oct. 27, 2022 (listing Nicaragua as a Central American country that uses CST all year). Notably, pursuant to F.R.E. 803(19), such statements of personal family history are admissible.

above. The Chacon Decision also adds a three-page Attachment entitled "Applicable Law/Regulation," the purpose of which is not immediately apparent. DE 14 at 40-42. Yet that attachment cites and quotes the provisions of 8 C.F.R. 103.8, as follows:

> (b) Effect of service by mail. Whenever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period.
>
> Service by mail is complete upon mailing.

DE 14 at 40.[5]

On January 11, 2019 and February 4, 2020, USCIS sounded the death knell for plaintiff Chacon's application, not through the clarion peal of a bell, but through the bureaucratic thud of the same rubber stamp emblazoned with the word "DENIED" surrounded by stars, stripes and the Statue of Liberty:

 

DE 14 at 23, 43. Nowhere in the file is there any indication that Monday, May 29, 2017 – the day before plaintiff's birthday – was Memorial Day, nor did USCIS consider this fact in connection with plaintiff's application.

On an agency appeal, counsel for Chacon argued that "USCIS' 'require[ment] that the [SIJ petition] be received ... before [her] 21st birthday is legal error.'" DE 14 at 16. Counsel had also argued that "CIS must be required to accept applications on the 21st birthday to allow for children who are 20 years old to apply even though it is on their last day of being 20 years old." DE 14 at

---

[5] Incongruously, that attachment also cites and quotes a plainly obsolete version of 8 C.F.R. 204.11, providing that applicants must meet "all the eligibility requirements" of SIJ status "[o]n November 29, 1990," a date that passed long before plaintiffs' birth. DE 14 at 41.

33. The Administrative Appeals Office (AAO) rejected this argument in a "non-precedent decision" dated August 21, 2019, holding:

> USCIS concluded that the Petitioner was ineligible for SIJ classification because her SIJ petition was received by users on her 21st birthday and, therefore, she was not under 21 years old at the time the SIJ petition was filed, as required. 8 C.F.R. § 204.11 (b)(l) (emphasis added); see 8 C.F.R. § 103.2(a)(7)(i) (stating filing date is day users receives filing). Therefore, the Petitioner remains ineligible for special immigrant juvenile (SIJ) classification. See 8 U.S.C. 1101 (a)(27)(J).

DE 14 at 3 ("Chacon AAO Decision"). As to the time of Chacon's birth, the administrative record is silent. In a sworn statement submitted at the Court's request, Chacon's mother averred that she gave birth to the plaintiff at approximately 10 p.m., Ecuador Time (ECT),[6] and provides corroborating details. DE 17 at 3.

## PROCEDURAL HISTORY

On April 5 and 25, 2022, plaintiffs' counsel filed complaints alleging violations of the Administrative Procedure Act (APA) and Fifth Amendment due process, and seeking injunctive relief. 22-cv-2319, DE 1; 22-cv-1926, DE 1. On September 7, 2022, the government filed pre-motion conference letters briefing motions to dismiss plaintiffs' claims, or alternatively, for summary judgment. 22-cv-2319, DE 15; 22-cv-1926, DE 14.

On October 12, 2022, the Court held a pre-motion conference in Chacon's case.[7] During oral argument, the Court noted that by failing to account for the intercession of Memorial Day in rejecting plaintiff's application, USCIS appeared to have violated the plain terms of 8 C.F.R. § 1001.1(h).[8] Moreover, the Court raised the question of whether, in both cases, USCIS's failure to consider the

---

[6] "Current Local Time in Cuenca, Ecuador," https://www.timeanddate.com/worldclock/ecuador/cuenca, last accessed Oct. 27, 2022.
[7] Under this Court's individual practice rules, "the pre-motion letter along with counsel's argument at the pre-motion conference, may be construed, at the discretion of the Court, as the motion itself," and counsel is aware that arguments not raised in the letters or at the conference may be deemed waived. *See* Rule II(f). Counsel were reminded of this rule in the Order scheduling the conference and immediately prior to oral argument. *See* Electronic Order dated Sept. 8, 2022; DE 16.
[8] Counsel for defendants acknowledged being unfamiliar with 8 C.F.R. §1001.1(h). DE 16.

hour of the plaintiffs' births, as opposed to simply the day, violated the law as provided in *Duarte-Ceri v. Holder*, 630 F.3d 83 (2d Cir. 2010).[9] The Court scheduled an evidentiary hearing for both cases for October 31, 2022, as the record was devoid of any evidence concerning the time of plaintiffs' births. 22-cv-1926, DE 16. A week later, at the direction of the Court, plaintiffs' counsel filed affidavits regarding the timing of plaintiffs' births. 22-cv-1926, DE 17; 22-cv-2319, DE 18. On October 24, 2022, the government filed stipulations of dismissal without prejudice in both cases. 22-cv-1926, DE 18; 22-cv-2319, DE 19. Neither stipulation discloses settlement terms or the resolution of plaintiffs' cases, nor were any representations made to the Court concerning voluntary cessation of any of the practices identified herein. *Id.*

This opinion follows.

## DISCUSSION

*Standard of Review under the Administrative Procedure Act*

The well-established standard of review for agency actions under the APA provides:

> Under the APA, courts review issues of law *de novo*. See 5 U.S.C. § 706 ("[T]he reviewing court shall decide all relevant questions of law...."). Although courts defer to an agency's reasonable interpretation of an ambiguous statute that the agency is charged with administering, s*ee Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), courts must "hold unlawful and set aside agency action[s]" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D); *Ass'n of Proprietary Colls.,* 107 F.Supp.3d at 344. Deference to the agency is unwarranted "if the agency has misconceived the law," *see SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943), or if "the intent of Congress is clear, ... for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43, 104 S.Ct. 2778; *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007).

*R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 360–61 (S.D.N.Y. 2019). Furthermore, in immigration law, "there is a long-standing presumption to construe any lingering ambiguities in favor of the

---

[9] In response, defendants relied exclusively upon *Calle v. Whitaker*, 2019 WL 447324 (E.D.N.Y. 2019). DE 16.

petitioner." *Duarte-Ceri v. Holder*, 630 F.3d 83, 89 (2d Cir. 2010) (citing *INS v. Cardoza–Fonseca*, 480 U.S. 421, 449 (1987)). Against that backdrop, the Court reviews the issues presented in these cases.

*The Stipulations and the Court's Continuing Jurisdiction*

The government abruptly filed eleventh-hour stipulations of dismissal without prejudice and without any award of fees and costs, one week before the Court-mandated evidentiary hearing on the Government's motions. 22-cv-1926, DE 18; 22-cv-2319, DE 19. The parties may file such a stipulation without a court order, and "[g]enerally, a plaintiff's filing in the district court of a stipulation of dismissal signed by all parties pursuant to Rule 41(a)(1)(ii) divests the court of its jurisdiction over a case." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139 (2d Cir. 2004). Yet, there are exceptions. "It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("district courts may enforce Rule 11 even after the plaintiff has filed a notice of dismissal under Rule 41(a)(1)"); *Gambale*, 377 F.3d at 140–42 (holding that district court retained supervisory power over issue implicating public right to access litigation records). And there are circumstances in which the Court retains jurisdiction "within Rule 41's 'applicable federal statute' exception . . . notwithstanding the parties' joint stipulation of dismissal . . . to review and approve (or reject) the settlement." *Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 809 (2d Cir. 2022).[10]

Even though Court approval is not required, the abrupt filings set against the facts developed

---

[10] Settlements related to the SIJ program – by which Congress set out to protect abused, neglected and abandoned children – may "raise[] the specter of defendants settling [ ] claims with plaintiffs, perhaps at a premium, in order to avoid a collective action or individual lawsuits from other[s] whose rights have been similarly violated." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Court approval of settlements is particularly warranted "when the statutory scheme indicates the serious importance of an issue, potential for abuse and ability to effect non-parties." *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 371 (E.D.N.Y. 2017). In the instant cases, the relevant Congressional enactment employs strong, mandatory language, which could satisfy the "applicable federal statute" prong of Rule 41. *See* 8 U.S.C. § 1232 ("Notwithstanding any other provision of law, an alien . . . may not be denied special immigrant status . . . based on age if the alien was a child on the date on which the alien applied for such status"). But the Court need not reach that issue.

in this case raise additional questions. Neither the stipulations, nor anything else filed in this matter, offer any insight into the nature of the resolution. 28 C.F.R. § 50.23(a) provides:

> It is the policy of the Department of Justice that, in any civil matter in which the Department is representing the interests of the United States or its agencies, it will not enter into final settlement agreements or consent decrees that are subject to confidentiality provisions, nor will it seek or concur in the sealing of such documents.

Furthermore, "as a general rule, civil settlements are subject to the principles of openness in judicial proceedings."[11] The failure to disclose the settlement agreements may violate 28 C.F.R. § 50.23(a). Courts have weighed whether the public revelation of Government settlement terms is required. *See, e.g.*, *Goodeagle v. United States*, 145 Fed. Cl. 646, 651 (2019) (considering "the strong presumption of public access to judicial proceedings and the public's right to monitor both the Government and this Court"). To determine whether there is a "strong public interest in this case," which would weigh in favor of disclosure, *Goodeagle*, 145 Fed. Cl. at 651, review is warranted.[12]

*SIJ Status*

Under Section 1101(a)(27)(J) of the INA, SIJ status is available to:

> an immigrant who is present in the United States--(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status . . .

8 U.S.C. § 1101(a)(27)(J). The relevant statutory and regulatory language limit eligibility to

---

[11] "1-18.000 – General Civil Settlement Principles," Department of Justice (DOJ), https://www.justice.gov/jm/1-18000-general-civil-settlement-principles, last accessed Oct. 27, 2022.

[12] Such a review necessarily includes whether USCIS's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and whether there is an apparent pattern of unlawful conduct.

applicants "under twenty-one years of age." 8 U.S.C. 1101(b)(1); 8 C.F.R. § 204.11(b)(1)(same); *cf. Alvarez Sosa v. Barr*, 369 F. Supp. 3d 492, 508 n.12 (E.D.N.Y. 2019) (describing consistent use of "under 21" language in both statute and regulation).

1. *The Effect of Birthday and Birth Hour on SIJ Eligibility*

USCIS explicitly denied I-360s received on plaintiffs' 21st birthdays, arguing that plaintiffs were no longer "under 21." These decisions ignore the time at which plaintiffs turned 21 years of age. *See* Aguinaga-Diaz Decision at 101; Chacon Decision at 38; Chacon AAO Decision.

The Second Circuit has definitively resolved this issue. In *Duarte-Ceri v. Holder*, a plaintiff argued he was entitled to derivative citizenship through his mother, which was available to those "under the age of eighteen years." 630 F.3d at 87. The Second Circuit held that if the applicant was born at approximately 9 p.m. on June 14, 1973, then he was still "under the age of eighteen years" when his mother took the oath of citizenship nearly eighteen years later on the morning of June 14, 1991. *Id.* at 85, 91; *accord Matter of L-M- & C-Y-C-*, 4 I. & N. Dec. 617 (BIA 1952). The Second Circuit noted that the statute "did not provide that a parent's naturalization had to take place 'before the child attains his eighteenth birthday' or 'prior to the child's eighteenth birthday,'" although Congress could have easily done so. *Id.* at 90. The same is true of 8 U.S.C. 1101(b)(1) and 8 C.F.R. § 204.11(b)(1), which require that a SIJ applicant be "under 21 years of age at the time of filing the petition" – not that the application be filed before their 21st birthday. Because the relevant statutory language is materially indistinguishable, *Duarte-Ceri v. Holder* plainly applies with equal force to SIJ petitions.

This is not the first occasion upon which a court criticized USCIS for ignoring *Duarte-Ceri*. Last year, another judge in this district rejected counsel's attempt to distinguish *Duarte-Ceri* and excoriated the agency for failing to follow the law:

> In its remand order, the BIA noted that "the petitioner has raised arguments on appeal"

> and emphasized Qiu and Coniglio's argument that, "under *Duarte-Ceri v. Holder*, the [Second Circuit] Court [of Appeals] rejected the notion that a child turned 18 at the stroke of midnight" and instead endorsed a lenient construction of the immigration law which "will ... preserve a right or prevent a forfeiture."
>
> \* \* \*
>
> [USCIS] is required to apply circuit precedent that speaks directly to the provision it interprets and is also prohibited from interpreting a statute inconsistently with circuit precedent that speaks to the interpretation, construction or "purpose" of a broader statutory scheme."
>
> \* \* \*
>
> [I]n *Duarte-Ceri*, the Second Circuit interpreted the phrase "under the age of eighteen years" in a statute governing derivative citizenship. 630 F.3d at 87. The Circuit held that the phrase was "ambiguous" because it was "susceptible to more than one meaning" and could refer either "to an applicant who has not yet reached the eighteenth anniversary of his birth" or to one who "had not yet lived in the world for eighteen years." *Id*. at 88. Faced with this ambiguity, the Court did not attempt a scientific determination of "biological fact," nor did it give pride of place to "everyday language." *Id*. at 88-89. Rather, it embraced the principle that "whenever it becomes important to the ends of justice, ... the law will look into fractions of the day" and immigration law's "longstanding presumption to construe any lingering ambiguities in favor of the petitioner" to hold that a child remained "under the age of eighteen" for the entirety of his birthday. *Id.*

*Coniglio v. Garland*, 556 F. Supp. 3d 187, 205 (E.D.N.Y. 2021) (finding USCIS's interpretation of the phrase "had not reached the age of 18 years" in § 1101(b)(1)(B) was contrary to law because it failed to apply *Duarte-Ceri* and *Matter of L-M- and C-Y-C-*).

Despite this unambiguous, binding precedent, the agency persists in maintaining the opposite, as made manifest in scores of USCIS agency actions and AAO decisions.[13] Included in that group are the Diaz Decision, the Chacon Decision and the Chacon AAO Decision, though none of those determinations provide any rationale. Others try. For example, one AAO decision states:

---

[13] AAO decisions expressly apply USCIS policy and legal interpretations adopted by the agency, rather than affording independent consideration to such questions. *See* USCIS Policy Memorandum dated Nov. 18, 2013, "Precedent and Non-Precedent Decisions of the Administrative Appeals Office (AAO)," at n.4 ("The AAO defers to the USCIS Senior Policy Council to prescribe agency policy and to the USCIS Office of the Chief Counsel (OCC) on matters of legal interpretation"), https://www.uscis.gov/sites/default/files/document/memos/PM-602-0086-1_AAO_Precedent_and_Non-Precedent_Decisions_Final_Memo.pdf, last accessed Oct. 27, 2022.

> Petitioner argues that due to the time difference between his location of birth in India and the location where he filed his SIJ petition in New York, he was still under 21 years old in India at the time USCIS received his petition. The Petitioner does not provide any support for his argument that we should rely on the time in a petitioner's home country, rather than the local time at the filing location in the United States, when determining when a petition is filed with USCIS. More importantly, neither the Act nor the regulations indicate that a day is a divisible unit or period of time when determining whether a petitioner is a child under the Act and eligible for SIJ classification. Also, absent an indication that Congress intended them to be read otherwise, we are expected to give the words of a statute their "ordinary, contemporary, common meaning."

*Matter of S-S,* 2019 WL 5068106, at *1. Many AAO decisions reach the same conclusions using the same language.[14] In regurgitating the construct that there is nothing in the law to "indicate that a day is a divisible unit," USCIS conveniently ignores that, as noted in *Duarte-Ceri*, the United States Supreme Court has provided just such an indication:

> the Supreme Court has long held that "whenever it becomes important to the ends of justice, ... the law will look into fractions of a day, as readily as into the fractions of any other unit of time." *Town of Louisville v. Portsmouth Sav. Bank,* 104 U.S. 469, 474, 26 L.Ed. 775 (1881); *accord Taylor v. Brown*, 147 U.S. 640, 645–46, 13 S.Ct. 549, 37 L.Ed. 313 (1893) ("as to the general doctine that the law does not allow of fractions of a day, it is settled that, when substantial justice requires it, courts may ascertain the precise time when ... an act [is] done"). The legal fiction that a day is indivisible is a rule of convenience that is satisfactory only as long as it does not operate to destroy an important right. *See In re Gubelman*, 10 F.2d 926, 930 (2d Cir.1925). "There is no indivisible unity about a day which forbids us, in legal proceedings, to consider its component hours, any more than about a month, which restrains us from regarding its constituent days. The law is not made of such unreasonable and arbitrary rules." *Portsmouth Sav. Bank,* 104 U.S. at 475.

*Duarte-Ceri v. Holder*, 630 F.3d at 88. Remarkably, some of these decisions cite the *dissent* in *Duarte-Ceri* as support for the agency's position.[15] The "indivisible day" rationale also defies common sense and experience: most Americans can tell time, and the advent of hours, minutes and seconds literally can be traced to the ancient Sumerians.[16] Thus, USCIS is systematically

---

[14] *See, e.g.*, *Appeal of National Benefits Center Decision*, 2021 WL 1838315, at *2; *Petition For Special Immigrant Juvenile*, 2015 WL 4385346, at *3; *Matter of A-E-G-D-*, *New York District Office*, 2015 WL 8520617, at *2 ("we look only to the date of filing, not the time of filing"); *Matter of N-S- Appeal of Holtsville, New York Field Office Decision*, 2016 WL 4399580, at *2.
[15] *See, e.g.*, *Matter of K-K-C-P-*, 2016 WL 5846223, at *2.
[16] Dobson, G., *A Chaos of Delight Science, Religion and Myth and the Shaping of Western Thought* (2016) at 48.

disregarding the law and common sense.

*Defendants' Litigation Position*

In seeking dismissal, defendants relied exclusively upon arguments regarding the propriety of a birthday dismissal, predicated upon a single district court opinion:

> USCIS properly rejected the I-360 because when it was filed, *i.e.*, received, by USCIS, plaintiff was 21 years of age, and thus not "under 21," as required by 8 C.F.R. § 204.11(b)(1). See *Calle v. Whitaker*, 18-CV-1957(SJF), 2019 WL 447324, at *17 (E.D.N.Y. Jan. 31, 2019) (I-360 petition untimely because the petitioner "was not a child, *i.e.*, under twenty-one (21) years of age, on the date on which he filed that application, since it was filed on his twenty-first (21st) birthday").

22-CV-1926, DE 13 at 2; 22-CV-2319 DE 15 at 2 (same). Defendants' reliance on *Calle* proves troubling. Obviously, *Calle v. Whitaker* is wrongly decided, as it runs contrary to the controlling Second Circuit precedent in *Duarte-Ceri*. Review of the court file in *Calle* provides further grounds for concern. First, the same AUSA represented defendants in *Calle* and *Aguinaga-Diaz*. Second, the motion papers submitted which led to the court's decision in *Calle* – which included full briefing and multiple memoranda of law – are bereft of any reference to *Duarte-Ceri*. See *Calle*, 18-CV-1957, DEs 16-18. Rather, to support its motion, USCIS advanced only its interpretation of the regulations, without any reference to statutory authority or case law. See *Calle*, DE 18 at 4 n.1 ("USCIS denied Plaintiff's second Petition filed on September 11, 2015, his twenty-first birthday, because Plaintiff had already turned twenty-one years of age and was therefore no longer eligible for SIJ classification"). Unfortunately, the district judge adopted this line of reasoning, contrary to the Second Circuit's binding precedent. Defendants should not be permitted to benefit from their incomplete work in that matter.[17]

---

[17] Being familiar with the two assigned AUSAs who, in other matters, have proven themselves to be hard working and dedicated government counsel, the Court deems the erroneous arguments made in these cases as an unfortunate oversight. However, USCIS should be held responsible for its continued disregard of binding caselaw.

2. *USCIS's violation of 8 C.F.R. § 1001.1(h)*

The day before Chacon's 21st birthday was Monday, May 29, 2017, *i.e.,* Memorial Day. Conspicuously absent from USCIS's denial of Chacon's SIJ petition is any mention of the agency's own regulation which provides "when the last day of the period so computed falls on a Saturday, Sunday, or a legal holiday, the period shall run until the end of the next day which is not a Saturday, Sunday, nor a legal holiday." 8 C.F.R. § 1001.1(h). Under the agency's interpretation, the computed due date was the day before plaintiff's birthday, which fell on a legal holiday. Hence, the filing deadline for Chacon's SIJ petition should have been extended to the end of Tuesday, the date upon which her application was received. Thus, even under USCIS's interpretation, its decision violated the regulation.

3. *Miscellaneous Issues Affecting Apparent Timeliness of SIJ Applications*

*The Chicago Lockbox Mandate*

At the time the petitioners' SIJ petitions were filed, USCIS required all U.S. applicants' petitions be sent to the "Chicago Lockbox."[18] Notwithstanding the presence of the USCIS Field Office in Holtsville, USCIS Application Support Centers in Hauppauge, Queens, Jamaica, Brooklyn and New York City, and the New York Asylum Office in Bethpage, Long Island, plaintiffs had to mail their applications to one of the two Chicago Lockbox addresses more than 800 miles away. This is equally true of applicants in San Francisco (about 2,100 miles from Chicago), Honolulu (4,200 miles) or Guam (7,400 miles). The lockbox system eliminates the possibility of local or personal delivery as USCIS requires delivery by USPS or overnight courier.

Yet, USCIS's regulations expressly contemplate filings "electronically or in paper format."

---

[18] "Direct Filing Addresses for [I-360]," USCIS, https://web.archive.org/web/20201126014607/https://www.uscis.gov/forms/direct-filing-addresses-for-form-i-360-immigrant-petition-for-amerasian-widower-or-special-immigrant (reflecting USCIS webpage as of Aug. 17, 2020 – May 18, 2021), last accessed Oct. 27, 2022.

8 C.F.R. § 103.2(a)(7)(i). USCIS allows for the electronic filing of at least ten different types of petitions.[19] Since the I-360 requires only copies of court documents, and USCIS permits electronic copies of original signatures, the insistence upon mailing of documents remains unjustifiable.[20] Moreover, the agency inexplicably disallows personal service of I-360s in Chicago or at other USCIS offices. Taken together, these factors raise issues as to whether USCIS's requisites represent an arbitrary and capricious exercise of its authority. *See Cabrera Cabrera v. United States Citizenship & Immigr. Servs.*, 374 F. Supp. 3d 153, 162 (D.D.C. 2019) (plaintiff raised plausible claim based on USCIS's failure to provide electronic service for I-360s).

It is well within the executive discretion to designate its use of facilities, presumably to maintain efficient performance of Government functions. Yet the Internal Revenue Service – the agency charged with the responsibility of collecting taxes that fund virtually all Government operations – recognizes that the receipt by the U.S. Postal Service, an agency created by our Constitution, along with the imprimatur of a postmark, suffices for recording timely filing of tax payments. *See* 26 C.F.R. § 301.7502-1(a). In some instances, USCIS defines receipt as acceptance by USPS as to certain other applications. *See, e.g.*, 8 C.F.R. § 245.10(a)(2)(i) (qualifying immigrant visa petition timely if "postmarked on or before April 30, 2001").

Under 8 C.F.R. § 103.8(b), USCIS deems its service by mail "complete" upon mailing, and builds in a three-day window for delivery. *Cf.* 22-CV-1926, DE 14 at 14 ("three days [are] added for service by mail"). Thus, while USCIS accounts for mailing delays when it chooses to use the mails

---

[19] "Forms Available to File Online," USCIS, https://web.archive.org/web/20210125014536/https://www.uscis.gov/file-online/forms-available-to-file-online (reflecting webpage as of Aug. 11, 2020 – July 29, 2022), last accessed Oct. 27, 2022.
[20] "Instructions for Petition for Amerasian, Widow(er), or Special Immigrant," USCIS Form I-360, https://web.archive.org/web/20201101013038/https://www.uscis.gov/sites/default/files/document/forms/i-360instr.pdf (Apr. 12, 2018 version) at 3, last accessed Oct. 27, 2022; "USCIS Announces Flexibility in Submitting Required Signatures During COVID-19 National Emergency," USCIS (Mar. 20, 2020), https://www.uscis.gov/news/alerts/uscis-announces-flexibility-in-submitting-required-signatures-during-covid-19-national-emergency, last accessed Oct. 27, 2022; "USCIS Extends COVID-19-related Flexibilities," USCIS (July 25, 2022), https://www.uscis.gov/newsroom/alerts/uscis-extends-covid-19-related-flexibilities, last accessed Oct. 27, 2022.

to provide notice, no reciprocity exists for applicants required to use the mails.

*Weather Events and the COVID Extension*

Aguinaga-Diaz's application, filed at the height of the COVID pandemic, was scheduled to arrive on February 3, 2021, the day before her birthday, but was unavoidably delayed due to a severe winter storm. DE 17 at 57-58. In fact, that same storm resulted in the closure or delayed opening of many USCIS facilities.[21] The Second Circuit has ruled that an agency should consider whether an unexplained error by an overnight courier constitutes "extraordinary or unique circumstances" justifying a delayed jurisdictional filing; surely an act of God warrants such consideration. *Zhong Guang Sun v. U.S. Dep't of Just.*, 421 F.3d 105, 111 (2d Cir. 2005).

In response to the COVID-19 pandemic, for obvious reasons, on March 30, 2020, USCIS announced a 60-day extension for certain deadlines. Under the policy, certain filings "received within 60 calendar days after the response due date set in the request or notice will be considered by USCIS before any action is taken."[22] USCIS repeatedly renewed and expanded this 60-day extension numerous times during the pandemic.[23] Yet these provisions were never extended to SIJ petitions, and would have changed the decision in Aguinaga-Diaz's case.

*Continuing Concerns*

The history of these matters implicates issues raising "strong public interest in this case," *Goodeagle v. United States*, 145 Fed. Cl. at 651, as well as matters of "serious importance [ ], potential for abuse and ability to effect non-parties," *Andrews*, 286 F. Supp. 3d at 371. Moreover,

---

[21] "USCIS Office Closings," USCIS (Feb. 3, 2021),
https://web.archive.org/web/20210203204157/https://www.uscis.gov/about-us/uscis-office-closings (reflecting USCIS webpage as of Feb. 3, 2021 and listing impact of storm on many Northeastern USCIS facilities), last accessed Oct. 27, 2022.
[22] "USCIS Expands Flexibility for Responding to USCIS Requests," USCIS (Mar. 30, 2020),
https://www.uscis.gov/news/alerts/uscis-expands-flexibility-for-responding-to-uscis-requests, last accessed Oct. 27, 2022.
[23] "USCIS Extends COVID-19-related Flexibilities," USCIS (July 25, 2022),
https://www.uscis.gov/newsroom/alerts/uscis-extends-covid-19-related-flexibilities, last accessed Oct. 27, 2022.

the concurrent presence of two such cases on this Court's docket, USCIS's incessant disregard of binding caselaw in its agency action and in scores of related AAO decisions, and the litigation positions taken herein, raise concerns as to the agency's handling of the instant matters as well as its treatment of similarly situated petitioners. Thus, fairness dictates that the nature of the settlements be revealed and other steps be considered to protect the public.

## CONCLUSION

Based on the foregoing, defendants shall:

1. File copies of all settlement paperwork and/or file a document describing the terms and conditions under which these cases were dismissed; and

2. Show cause, if any they have, as to why an order should not be entered directing defendants to:

    a. Describe the steps, if any, taken by defendants to ensure USCIS's compliance with the law and its own regulations in future determinations of the timeliness of SIJ applications; and

    b. Identify all pending SIJ applications which were "received" on the applicant's 21st birthday and all pending administrative and judicial appeals of SIJ applications which were denied on the grounds that the application was "received" on the applicant's 21st birthday.

Defendants' response shall be in writing and shall be filed by ECF by no later than November 4, 2022. Plaintiffs' counsel may file any response thereto one week after the filing by the defendants.

**SO ORDERED**.

Dated: Central Islip, New York  
      October 28, 2022

/s/ Gary R. Brown  
GARY R. BROWN  
United States District Judge